**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BANC OF AMERICA MERRILL LYNCH COMMERCIAL MORTGAGE INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2016-KX02, acting by and through its special servicer KeyBank N.A., | |
| Plaintiff, | Case No. _____ |
| -against- | Section 121.24 Block: 2 Lot: 13 |
| HOMESTATE ASSET MANAGEMENT, LLC, TYCO FIRE & SECURITY (US) MANAGEMENT, INC. D/B/A JOHNSON CONTROLS FIRE PROTECTION, THOMAS MASASCHI, and "JOHN DOE #1" through "JOHN DOE #12," the last twelve names being fictitious and unknown to the Plaintiff, the persons or parties, if any, having or claiming an interest in or lien upon the premises, described in the Complaint, | 101-129 East Avenue Monroe County, New York |
| Defendants. | |

## VERIFIED COMPLAINT

Plaintiff U.S. Bank National Association, as Trustee for the Registered Holdings of Banc of America Merrill Lynch Commercial Mortgage Inc., Multifamily Mortgage Pass-Through Certificates, Series 2016-KX02, acting by and through its special servicer KeyBank N.A. by its attorneys Troutman Pepper Hamilton Sanders LLP, as and for its Complaint against the Defendants, alleges as follows:

### PARTIES

1.      The Plaintiff is a national banking association organized under the laws of the United States of America, with its designated main office located at 425 Walnut Street, Cincinnati, Ohio 45202.  KeyBank National Association ("KeyBank")is the special servicer of the loan at

113729161

issue with a main address of 11501 Outlook Street, Suite 300, Overland Park, KS 66211.

2.     Upon information and belief, Defendant Homestate Management, LLC (the "Borrower") is a limited liability corporation organized under the laws of the State of Delaware with a principal place of business located at 2604 Elmwood Avenue, Suite 352, Rochester, New York 14618.

3.     Upon information and belief, Defendant Thomas Masaschi ("Masaschi" or the "Guarantor") is a citizen and resident of the State of New York, with an address of 3565 Elmwood Avenue, Rochester, New York 14618. Masaschi is named as defendant in this action because he executed a guaranty agreement described in greater detail below.

4.     Tyco Fire & Security (US) Management, Inc. d/b/a Johnson Controls Fire Protection ("Tyco") is a corporation organized under the laws of the State of Florida, with an address at 6600 Congress Avenue, Boca Raton, FL 33487. Tyco is named as a defendant in this action because, upon information and belief, it holds a judgment lien against the Property (as defined below).

5.     Upon information and belief, Defendants "John Doe #1" through "John Doe #12" constitute persons or entities who may have or claim a lien or other interest in the Property. Said Defendants are made party defendants for the purpose of terminating their interests in the Property.

6.     Each of the above-named Defendants has, or claims to have, or may claim to have, some interest in or lien upon the Property or some part thereof, which interest or lien, if any, has accrued subsequent to, and is subject and subordinate to, the lien created by the "Multifamily Mortgage" (as defined below).

7.     The real property that is the subject of this action is located in Monroe County, New York, and consists of apartment and retail buildings and all related fixtures and personal property,

commonly known as 101-129 East Avenue, Rochester, New York (the "Property"). The Property is legally described in **Exhibit 1**, attached to this Complaint, and incorporated herein by reference.

8.      Upon information and belief, as of the date of this Complaint, the Borrower is the owner of the Property.

## JURISDICTION AND VENUE

9.      The dispute arises between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Therefore, this Court has diversity of citizenship jurisdiction over the subject matter of the dispute pursuant to 28 U.S.C. § 1332.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 because the Property is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTS

### *Loan Origination*

11.     On or about February 27, 2015, the Borrower and Arbor Commercial Mortgage, LLC (the "Original Lender") executed numerous documents evidencing a loan (the "Loan") to the Borrower.

12.     The original principal amount of the Loan was $22,800,000.00.

13.     On or about February 27, 2015, the Borrower executed a Multifamily Promissory Note (the "Multifamily Note") with the Original Lender.  A copy of the Multifamily Note dated February 27, 2015, is attached to this Complaint as **Exhibit 2** and incorporated herein by reference.

14.     On or about February 27, 2015, the Borrower executed a Multifamily Loan and Security Agreement in the original principal amount of $28,800,000.00 (the "Loan Agreement"), a copy of which is attached to this Complaint as **Exhibit 3** and incorporated herein by reference.

3

15.     On or about February 27, 2015, the Borrower executed a Multifamily Mortgage, Assignment of Rents and Security Agreement in the original principal amount of $28,800,000.00 (the "Multifamily Mortgage"), a copy of which is attached to this Complaint as **Exhibit 4** and incorporated herein by reference.

16.     The Multifamily Mortgage incorporates the Assignment of Leases and Rents, which includes:

> [A]ll rents (whether from residential or non-residential space), revenues and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Property, whether now due or to become due, and deposits forfeited by tenants, and, if Debtor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due or to become due (collectively the "Rents").

*See* Exhibit 4 at page 7.

17.     On or about February 27, 2015, the Guarantor executed a Guaranty (the "Guaranty") to personally and unconditionally guarantee payment of certain of the Borrower's obligations under the Loan Documents on the terms and conditions described therein. A copy of the Guaranty is attached to this Complaint as **Exhibit 5** and incorporated herein by reference.

18.     The Loan Agreement, Multifamily Note, Multifamily Mortgage, Assignment of Leases and Rents, Guaranty, and all other documents executed in connection with the Loan (the "Loan Documents") were delivered to the Original Lender at the closing of the Loan on or about February 27, 2015.

19.     On or about March 2, 2015, the Multifamily Mortgage was recorded in the Monroe County Clerk's Office at Control Number 201503020855.  *See* Exhibit 4.

20.     Upon information and belief, any applicable recording tax was paid at the time of the recording of the Multifamily Mortgage.

4

21.     Financing statements (the "UCC Statements") relating to items pledged as both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property ("Personal Property and Fixtures"), as defined in the Multifamily Mortgage, were recorded in: (i) the Uniform Commercial Code Filing Section of the Delaware Department of State under Filing Number 20150892678 on or about March 3, 2015; and (ii) the Monroe County Clerk's Office at Control Number 201503020857 on or about March 2, 2015. Copies of the recorded UCC Statements are attached to this Complaint as **Exhibit 6** and incorporated herein by reference.

22.     The Multifamily Mortgage granted the Original Lender a security interest in, among other things, the Personal Property and Fixtures, plans, leases, Rents, and property agreements associated with the Property.

23.     The Original Lender funded the Loan in full on or about February 27, 2015.

**Assignment of the Loan Documents to the Plaintiff**

24.     On or about February 27, 2015, the Original Lender assigned the Multifamily Mortgage to Federal Home Loan Mortgage Corporation, which was recorded in the Monroe County Clerk's Office on March 2, 2015 at Control Number 201503020883. The Multifamily Mortgage was further assigned by Federal Home Loan Mortgage Corporation to Plaintiff by assignment dated August 25, 2016, and recorded on August 29, 2016 at Control Number 201608290278 (collectively, the "Mortgage Assignments").  Copies of the recorded Mortgage Assignments are attached to this Complaint as **Exhibit 7** and incorporated herein by reference.

25.     Financing statement amendments reflecting the assignment of the Lender's security interest to the Plaintiff (together, the "UCC Assignments") were recorded in: (i) the Uniform Commercial Code Filing Section of the Delaware Department of State under Filing Number 20165286446 on or about August 30, 2016; and (ii) the Monroe County Clerk's Office under

5

Control Number 201608290279 and recorded on or about August 29, 2016. The effectiveness of the UCC Statements was continued by financing statement amendments (the "UCC Continuations") recorded in: (i) the Uniform Commercial Code Filing Section of the Delaware Department of State under Filing Number 20200421174 on or about January 17, 2020; and (ii) the Monroe County Clerk's Office under Control Number 202001210426 and recorded on or about January 21, 2020. Copies of the recorded UCC Assignments and UCC Continuations are attached to this Complaint as **Exhibit 8** and **Exhibit 9** respectively, and incorporated herein by reference.

26.     Plaintiff is the owner and holder of the Multifamily Note and Multifamily Mortgage sought to be foreclosed herein.

### *The Event of Default Under the Loan Documents*

27.     In the Amended and Restated Operating Agreement (the "Operating Agreement") of Borrower dated October 29, 2013, DHD Ventures Capital, LLC is listed as the sole member of Borrower (the "Original Sole Member") with Thomas Masaschi named as the appointed Manager (the "Manager"). A copy of the Operating Agreement is attached as **Exhibit 10** and incorporated herein by reference.

28.     On November 1, 2018, the Original Sole Member transferred 49% of its membership interest in the Borrower to Trason Elm, LLC (the "Additional Member").  Along with the transfer of the membership interests to the Additional Member, the Original Sole Member also transferred, and now shares, the managerial rights in Borrower with Daniel Elstein (the "**Transfer**").  A copy of the Assignment of Membership Interest is attached as **Exhibit 11** and incorporated herein by reference.

29.     Section 7.02(d) of the Loan Agreement prohibits "A Transfer of any general partnership interest in a partnership, or any manager interest (whether a member manager or non-

6

member manager) in a limited liability company, or a change in the trustee of a trust other than as permitted in Section 7.04, if such partnership, limited liability company, or trust, as applicable, is Borrower or Designated Entity for Transfers."

30.     The Transfer of the Original Sole Member's management rights to Daniel Elstein is prohibited under Section 7.02 of the Loan Agreement. Accordingly, an Event of Default has occurred under Section 9.01(f) of the Loan Agreement, which provides that an Event of Default exists when "[a] Transfer occurs that violates provisions of Article VII, whether or not any actual impairment of Lender's security results from such Transfer."

31.     Borrower failed to satisfy the provisions of Section 7.05 of the Loan Agreement, which sets forth the conditions precedent to Plaintiff's approval of the Transfer, and has otherwise failed to cure the Event of Default caused by the Transfer.

32.     By reason thereof, an Event of Default has occurred under the Loan Agreement pursuant to Section 9.01(f) of the Loan Agreement.

33.     On July 30, 2020, the Plaintiff sent the Borrower a Default Notice advising Borrower of the Event of Default under the Loan Agreement. A copy of the Default Notice is attached as **Exhibit 12** and is incorporated herein by reference.

34.     On January 8, 2021, Plaintiff sent Borrower a Notice of Acceleration (the "Acceleration Notice"). A copy of the Acceleration Notice is attached to the Complaint as **Exhibit 13** and is incorporated herein by reference.

35.     The Borrower has failed to cure the Event of Default.

***Event of Default Remedies***

36.     Pursuant to the express terms of the Loan Agreement at Sections 9.01, 9.02 and 9.03, and Section 3 of the Multifamily Mortgage, upon the occurrence of an Event of Default, the Plaintiff is entitled to, among other things, foreclose on and apply for the appointment of a receiver

7

for the Property. *See* Exhibit 3, at Sections 9.02 and 9.03, and Exhibit 4, at Sections 3(c)(ii) and 8.

37.     Pursuant to the terms of the Multifamily Note, the interest rate on the Loan accrues at the Default Rate of four percentage points above the Fixed Interest Rate (4.07%) from the date of default. *See* Exhibit 2 at Section 1(a).

38.     The Assignment of Leases and Rents further provides that, upon an Event of Default, such license shall be revoked upon written notice from the Plaintiff, at which point the Plaintiff is immediately entitled to receive and apply all rents to the amounts due under the Loan Documents. *See* Exhibit 4, at Section 3(b)(iii).

*Junior Interests in the Property*

39.     By this Complaint, the Plaintiff seeks to foreclose and cut off all known and unknown junior interests or claims in and to the Property, except the junior interests or claims of any tenants of the Property to the extent there are any.

40.     Upon information and belief, Tyco's lien should be foreclosed and expunged from the public records as its interest is junior to the Plaintiff's interests in the Property as set forth in the Multifamily Mortgage and Loan Documents and may be foreclosed as a result.

## FIRST CAUSE OF ACTION
### (Foreclosure of Mortgage)

41.     The Plaintiff repeats and realleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

42.     The Loan Documents constitute valid and binding agreements of the parties thereto.

43.     The Borrower breached the terms of the Loan Documents by, among other things, the Transfer of the Original Sole Member's managing rights to Daniel Elstein.

44.     Borrower failed to satisfy the provisions of Section 7.05 of the Loan Agreement, which sets forth the conditions precedent to Plaintiff's approval of the Transfer, and has otherwise

failed to cure the Event of Default caused by the Transfer.

45. By reason thereof, an Event of Default occurred under the Loan Agreement pursuant to Section 9.01(f) of the Loan Agreement.

46. There is now due and owing to the Plaintiff under the Loan Documents the principal sum of $21,644,382.08, plus (i) accrued interest at the Default Rate (as that term is defined in the Multifamily Mortgage), (ii) any applicable late charges, along with all other sums due and owing under the Loan Documents, (iii) the costs of collection including, without limitation, reasonable attorneys' fees and expenses and other sums, all as more fully provided for in the Loan Documents, which sums are due and owing in addition to any usual costs and allowances that the Plaintiff may be entitled to and may be awarded under any law or statute applicable to this action.

47. In order to protect its security, the Plaintiff may be compelled to pay during the pendency of this action additional taxes, water and sewage charges, assessments, insurance premiums, and other charges necessary or advisable to maintain or increase the value of, or otherwise affecting, the Property, and the Plaintiff requests that any sums so advanced and any other sums of like nature so paid during the pendency of this action be added to the amount otherwise due to the Plaintiff and be deemed secured by the Multifamily Mortgage and adjudged a valid lien on the Property pursuant to the terms of the Loan Documents.

48. Upon information and belief, the interests, liens, or claims of the Defendants herein are all subordinate and subject to the Multifamily Mortgage held by the Plaintiff and being foreclosed herein, and no persons or entities other than those described herein have, may have, or claim to have any interest in and/or lien upon the Property superior to the lien of the Multifamily Mortgage being foreclosed.

49. In the event that the Plaintiff possesses any other lien(s) against the Property either

9

by way of judgment, junior or senior mortgage, or otherwise, the Plaintiff requests that such other lien(s) shall not be merged in the Plaintiff's causes of action set forth in this Complaint, but that the Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

50.     The Plaintiff shall not be deemed to have waived, altered, or released any defaults or events of default mentioned herein, nor shall the Plaintiff be deemed to have changed the election hereinbefore made, by reason of any payment after the commencement of this action, and such election shall continue and remain effective.

51.     Upon information and belief, none of the Defendants are infants, absentees, or incompetents, nor have they been proceeded against as such.

52.     No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Multifamily Mortgage or for recovery of said sum secured by the Multifamily Note and Multifamily Mortgage or any part thereof.

53.     By virtue of the foregoing, the Plaintiff is entitled to a judgment of foreclosure under the Multifamily Mortgage.

**SECOND CAUSE OF ACTION**
(Entitlement to Rents)

54.     The Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs of this Complaint as if fully set forth herein.

55.     The Assignment of Leases and Rents provides that the Borrower unconditionally and absolutely assigned to the Plaintiff (and its successors and assigns) all of the Borrower's right, title, and interest in and to all leases or other agreements relating to the use or occupancy of the Property and Rents.

113729161

56.     In return, the Plaintiff granted the Borrower a revocable license to collect and use Rents.

57.     The Assignment of Leases and Rents further provides that, upon an Event of Default, such license shall be revoked upon written notice from the Plaintiff, at which point the Original Lender is immediately entitled to receive and apply all rents to the amounts due under the Loan Documents. *See* Exhibit 3, at Section 3(b)(iii).

58.     Accordingly, the Plaintiff is entitled to collect all Rents and fees associated with the Property.

### THIRD CAUSE OF ACTION
(Foreclosure of Security Interest in Personalty)

59.     The Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs of this Complaint as if fully set forth herein.

60.     The Loan Documents constitute valid and binding agreements of the parties thereto.

61.     The Borrower breached the terms of the Loan Documents by virtue of the prohibited Transfer and failure to cure the Event of Default as required under the Loan Documents.

62.     As set forth above, the Plaintiff maintains a perfected security interest in all the Borrower's Personal Property and Fixtures.

63.     Therefore, the Plaintiff is entitled to foreclose on its security interest in all the Borrower's Personal Property and Fixtures.

### FOURTH CAUSE OF ACTION
(Appointment of a Receiver)

64.     The Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs of this Complaint as if fully set forth herein.

65.     Upon information and belief, the Property is the sole asset of the Borrower.

66.     Upon information and belief, the Property is in danger of waste and disposal.

11

67.     The Plaintiff is threatened with material losses and injuries for which it has no adequate remedy at law against the Defendants if the Borrower remains in control of the Property.

68.     The Plaintiff has a lien on the Property, which includes all real property, Rents, and Personal Property and Fixtures located at or associated with the Property.

69.     Under the Loan Documents, the Borrower expressly agreed that, if an Event of Default exists, the Plaintiff is entitled to seek the appointment of a receiver.

70.     Pursuant to Sections 9.02 and 9.03 of the Loan Agreement, Sections 3(c)(ii) and 8 of the Multifamily Mortgage and Section 254(10) of the New York Real Property Law, Plaintiff is entitled to the appointment of a receiver in this action without notice to defendants.

71.     As stated above, an Event of Default occurred when the Borrower made a prohibited Transfer under the Loan Agreement and failed to cure the Event of Default as required under the Loan Documents.

72.     Pursuant to the Assignment of Leases and Rents, the Borrower's license to collect the rents from the Property has terminated on account of this Event of Default.

73.     The Plaintiff is entitled to the appointment of a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Property and Rents.

**WHEREFORE**, the Plaintiff respectfully requests that the Court enter judgment against the Defendants as follows:

- Declaring that an Event of Default exists under the Loan Documents arising out of the Borrower's breach of its contractual obligations to the Plaintiff;

- Ordering that the Defendants and all persons claiming by, through, or under them, and that every person whose right, title, conveyance, or encumbrance is recorded subsequent to the filing of the Notice of Pendency of this action, be barred and

113729161

foreclosed of all right, title, interest, claim, lien, and equity of redemption in and to the Property and each and every part and parcel thereof;

- Directing that the Property be sold according to law, subject to the following terms:

  o Any state of facts that an inspection of the Property would disclose;

  o Any state of facts that an accurate survey of the Property would show;

  o Covenants, restrictions, easements, and public utility agreements of record that have not been cancelled or otherwise survive foreclosure, if any;

  o Building and zoning ordinances of the municipality in which the Property is located and possible violations of the same;

  o Any rights of tenants or persons in possession of the Property;

  o Any equity of redemption of the United States of America to redeem the Property within 120 days from the date of sale;

  o Prior mortgage lien(s) of record, if any, and any advances and arrears thereunder; and Prior lien(s) of record, if any.

- Directing that the monies arising from the sale be brought into Court; and that the sale shall be consummated for whatever amount or amounts shall result in the highest aggregate purchase price; and that the Defendants shall surrender possession to the purchaser or purchasers, of all items of property sold at the foreclosure sale;

- Directing that the Plaintiff may be paid the amount due under the Loan Documents, specifically including the Multifamily Mortgage and Multifamily Note with interest, late charges, and all other applicable costs and charges to the time of such payment and the expenses of such sale, plus reasonable attorneys' fees, together

13

with the costs, allowances, and disbursements of this action, and together with any sums incurred by the Plaintiff pursuant to any term or provision of the Loan Documents set forth in this Complaint, or paid by the Plaintiff to protect the Property, together with interest upon said sums from the dates of the respective payments and advances thereof;

- Directing that the purchaser or purchasers at said sale be let into possession on production or delivery of referee's or receiver's deed or deeds;

- Ordering that advertisement of the notice of sale be made pursuant to New York Real Property Actions and Proceedings Law § 231;

- Permitting the Plaintiff to foreclose its security interest in all the Borrower's Rents, Personal Property and Fixtures;

- Directing any lessee or other person agreeing to make use or occupancy payments to the Borrower to make payments directly to the Plaintiff and permitting the Plaintiff to apply such amounts in accordance with the Assignment of Rents;

- Declaring that the Borrower has waived any objection to the appointment of a receiver;

- Appointing a receiver over the Property, pursuant to New York Real Property Actions and Proceedings Law § 1325, for the purposes of preserving and protecting the value of the Property and to take immediate possession of the Property and all books, records, accounts, revenues, and other items incidental thereto, and to collect the rents, issues, benefits and profits of the Property during the pendency of this action or to perform such other acts as the Court orders and deems appropriate;

14

- Ordering the Borrower to promptly render an accounting for all cash collateral and any other funds derived from the ownership or operation of the Property received by the Borrower, and in all respects to cooperate with the receiver to provide the Plaintiff and the receiver with all information and instrumentalities necessary for the receiver to perform its obligations as receiver;

- Ordering that the receiver be authorized to collect all rents and profits of the Property and be granted all the necessary and customary powers of a receiver, including, without limitation, the power to employ third party property managers, leasing and sale brokers, environmental consultants, counsel, and other necessary third parties, and to bring, defend and/or intervene in actions as may be necessary to discharge his duties as receiver, without further order of this Court;

- Ordering the receiver to pay to the Plaintiff on a monthly basis any revenue derived from the ownership or operation of the Property in excess of the amount reasonably required to manage, operate, lease, maintain, and preserve the Property;

- Ordering that the Plaintiff be permitted and authorized, at its sole election, to make such advances to the receiver, as may be necessary from time to time, in the exercise of the Plaintiff's sole discretion, and as provided under the Loan Documents, to pay costs and expenses reasonably required to manage, operate, lease, maintain and preserve the Property to the extent that the gross revenue derived from the ownership or operation of the Property is insufficient to pay such costs and expenses, without the Plaintiff becoming a mortgagee-in-possession or incurring any other liability to the Defendants or third parties;

15

- Ordering that any advances made by the Plaintiff shall be additional obligations owed by the Defendants to the Plaintiff, to be added to the Borrower's outstanding indebtedness under the Loan Documents and secured by the Plaintiff's first-priority lien on and perfected security interest in the Property, Rents and Personal Property and Fixtures; and

- Granting such other and further relief as this Court deems just and proper.

Dated: Rochester, New York
      March 22, 2021

                                 **TROUTMAN PEPPER HAMILTON SANDERS LLP**

                                 By: */s/ Christina L. Shifton*
                                        Christina L. Shifton
                                        70 Linden Oaks, Suite 210
                                        Rochester, New York  14625
                                        Telephone: (585) 270-2100
                                        Facsimile:  (585) 270-2179
                                        Email:  Christina.Shifton@troutman.com

                                        Joseph M. DeFazio
                                        (*pro hac vice* application to be filed)
                                        TROUTMAN PEPPER HAMILTON SANDERS LLP
                                        875 Third Avenue
                                        New York, New York  10022
                                        Telephone:  (212) 704-6000
                                        Facsimile:  (212) 704-6288
                                        Email:  Joseph.DeFazio@troutman.com

                                        *Attorneys for U.S. Bank Nationstar Association, as Trustee for the Registered Holdings of Banc of America Merrill Lynch Commercial Mortgage Inc., Multifamily Mortgage Pass-Through Certificates, Series 2016-KX*

16

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Mike Jenkins, declare and verify under penalty of perjury as follows:

1. I am a Vice President for KeyBank N.A., the special servicer for the Loan on behalf of Plaintiff U.S. Bank National Association, as Trustee for the Registered Holdings of Banc of America Merrill Lynch Commercial Mortgage Inc., Multifamily Mortgage Pass-Through Certificates, Series 2016-KX02.

2. I have read the foregoing Verified Complaint, and, upon information and belief, the allegations therein are true and correct.

3. The grounds for my belief as to all matters are my review of correspondence and other writings relevant to this action that were available to me.

Executed on March 4, 2021

_____
Mike Jenkins

113729161v1