# EXHIBIT 10

[Operating Agreement]

# AMENDED AND RESTATED
# OPERATING AGREEMENT
## OF
## HOMESTATE ASSET MANAGEMENT, LLC

THIS AMENDED AND RESTATED AGREEMENT made effective October ２⁴, 2013, by DHD Ventures Capital, LLC, the sole member of *Homestate Asset Management, LLC,* a Delaware limited liability company, amends and restates the Operating Agreement dated October 2012 in order to amend Section 1.4 of this Agreement make the Company a single purpose entity.

## ARTICLE I
### Formation and Name: Office; Purpose; Term

1.1. *Organization.* The Member, as sole Member, has caused the organization of a limited liability company pursuant to the Limited Liability Company Law of the State of Delaware (the "Law") and the provisions of this Agreement and, for that purpose has caused Certificate of Formation to be prepared, executed, and filed with the Delaware Secretary of State on June 18, 2012 (the "Certificate of Formation") with authority to operate in New York State.

1.2. *Name of the Company.* The name of the Company shall be "*Homestate Asset Management, LLC.*" The Company may do business under that name and under any other name or names which the Member may select. If the Company does business under a name other than that set forth in its Certificate of Formation, then the Company shall file an assumed-name certificate as required by the laws of the State of Delaware.

1.3. *Term.* The term of the Company shall be from the date of the filing of the Certificate of Formation and shall have a perpetual existence unless its existence is sooner terminated pursuant to Article VII of this Agreement.

1.4 *Purpose.* The sole purpose of the Company is to own, operate, maintain and lease the project known as 101-129 East Avenue, a multi-family property located at 101-129 East Avenue, Rochester, New York (the "Property"). The Company exists for no other purpose other than to own, operate, maintain and lease the Property.

1.5. *Members.* The name, present mailing address and taxpayer identification number of the Member is as follows:

| Name | Address | Taxpayer Identification No. |
|---|---|---|
| ~~DHD Ventures Capital, LLC~~ | ~~2604 Elmwood Avenue, #352~~ Rochester, NY 14618 | |

## ARTICLE II
### Capital; Capital Account

2.1. *Initial Capital Contributions.* Upon the execution of this Agreement, the Member shall contribute to the Company cash in the amount of One Dollar ($1.00).

2.2. *No Additional Capital Contributions Required.* The Member shall not be required to contribute any additional capital to the Company, and the Member shall not have any personal liability for any debt, obligation, or liability of the Company.

2.3. *No Interest on Capital Contributions.* The Member shall not be paid interest on its Capital Contributions.

2.4. *Return of Capital Contributions.* The Member shall not have the right to receive any return of any Capital Contribution.

2.5. *Form of Return of Capital.* If the Member is entitled to receive a return of a Capital Contribution, the Company may distribute cash, notes, property, or a combination thereof to the Member in return of the Capital Contribution at the discretion of the Managing Member.

2.6. *Loans.* The Member may, at any time, make or cause a loan to be made to the Company in any amount and on those terms as determined by the Member.

## ARTICLE III
### Profit, Loss and Distributions

3.1. *Distributions of Cash Flow.* Cash flow may be distributed to the Member at such times and in such amounts as is determined by the Manager in its sole discretion. Such distributions shall be allocated to the Member in the same proportion as its then capital account balance.

# ARTICLE IV
## Management: Rights, Powers and Duties

### 4.1. *Action by Vote of the Members*

4.1.1. Except as otherwise provided in this Section 4.1., a Member shall not have the right to vote or otherwise act with respect to matters affecting or involving the Company.

4.1.2. Except as may be otherwise provided in this Agreement, the taking of any of the following actions shall require the affirmative vote or consent of members holding not less than a majority of the Membership Interests:

    (i) The merger, consolidation, or combination of the Company with any other person or entity:

    (ii) The dissolution of the Company as provided by Article VII of this Agreement;

    (iii) The removal of a Manager and the election of a successor Manager;

    (iv) A change in the number of Managers of the Company;

    (v) The sale, exchange, lease, pledge or granting a mortgage or other security interest in all or substantially all of the assets of the Company; and

    (vi) The amendment of this Agreement or the Certificate of Formation.

### 4.2. *Management.*

4.2.1. The Company shall be managed by a Manager. Except as set forth in Section 4.1 above, the Manager shall have the full and exclusive right and power to act for and bind the Company. *The initial Manager shall be Thomas Masaschi.*

4.2.2. The Manager may cause the Company to employ and retain such other persons as may be necessary or appropriate for the conduct of the Company's business, on such terms as the managing Manager shall determine, including persons who may be designated as officers. The officers of the company shall have the titles, powers and duties delegated to them by the Manager. Any number of titles may be held by the same officer.

4.2.3. The Manager shall have the power and authority to delegate its right and power to manage and control the business and affairs of the Company to one or more other persons, (including one or more committees, managers and agents, employees and/or affiliates of a manager), including delegation by management agreement or other arrangement.

4.3. *Duties of Managers.*

4.3.1. The Manager shall perform its duties as Manager in good faith and with that degree of care which an ordinary prudent person in like position would use under similar circumstances. In performing its duties, that Manager shall be entitled to rely on information, opinions, reports and statements, including, without limitation, financial statements and other financial data, in each case prepared by any person or entity as to matters the Manager reasonably believes are within such person's or entity's professional or expert competence.

4.3.2. Have fiduciary responsibility for the safekeeping and use of all funds, property and assets of the Company, whether or not in its immediate possession or control, and shall not employ, or permit another to employ, such funds, property or assets in any manner except for the exclusive benefit of the Company;

4.3.3. Deposit all funds of the Company in one or more separate accounts with such financial institutions as the Manager may designate (withdrawals from such accounts to be made upon such signature or signatures as the Manager may designate);

4.3.4. Maintain complete and accurate records of all assets owned or leased by the Company and maintain complete and accurate books of account (containing such information as shall be necessary to record allocations and distributions);

4.3.5. Provide reviewed financial statements if requested by Members holding more than 50 percent (50%) of the Membership Interests;

4.3.6. Use its best efforts to prepare and distribute all required tax reporting information to the Members within 90 days after the end of each Fiscal Year;

4.3.7. Use its best efforts to cause to be prepared and filed in a timely manner the tax return of the Company, except to the extent the preparation or filing of any such return is delayed and subsequently prepared and filed pursuant to any lawful extension of time therefor or to the extent the preparation or filing of any such return is delayed for any reason beyond the reasonable control of the Manager; and

4.3.8. Cause to be filed such certificates and do such other acts as may be required by law to qualify and maintain the Company as a limited liability company, including appointment of a statutory agent, in all states in which the Company transacts any business, maintains an office or owns property.

4.4. *Powers of Manager.* Except as otherwise set forth in this Agreement, the Manager shall have power and authority, on behalf of the Company, to:

4.4.1. Acquire such assets that the Manager determines is appropriate and in the best interests of the Company;

4.4.2. Establish, maintain and draw upon checking and other accounts in the name of the Company in such financial institutions as the Manager may, from time to time, select;

4.4.3. Negotiate, enter into, execute, deliver and perform any and all contracts appropriate for the Company's business;

4.4.4. Commence, defend, settle, compromise, appeal, prosecute or otherwise deal with any legal proceedings on behalf of the Company, before any court or governmental agency;

4.4.5. Execute any notifications, statements, reports, returns and other filings that are necessary or desirable to be filed with any federal or state securities commission;

4.4.6. Make any tax elections available to the Company pursuant to the Code, the Regulations and any state and local tax laws;

4.4.7. Sell, exchange, dispose of, transfer, lease or otherwise alienate or convey title to or grant an option for the sale of all or any portion of the real or personal property of the Company;

4.4.8. Purchase, lease, invest in, or otherwise acquire title to, or an option for the purchase of, any real or personal property of any kind or description appropriate for the Company's business;

4.4.9. Borrow money and, as security therefor, mortgage or grant security interests in all or any part of the Company's assets;

4.4.10. Refinance, recast, increase, modify, consolidate, extend or prepay, in whole or in part, any mortgage or security interest affecting any Company assets, upon such terms as is deemed proper;

4.4.11. Employ placement agents, accountants, attorneys, financial consultants and other persons and entities as may be reasonably necessary in the Company's business, on such terms and for such compensation as shall be reasonably determined;

4.4.12. Set up and maintain all reserves permitted to be set up or maintained by the Managing Member pursuant to this Agreement;

4.4.13. Prepare and file all reports required to be filed with any governmental agency or authority;

4.4.14. Execute, acknowledge, and deliver any and all instruments which are reasonably necessary to effectuate any of the foregoing; and

4.4.15. Do all things permitted by law and exercise all authority of the Company under or within the purposes set forth in this Agreement.

4.5 *Liability and Indemnification.*

4.5.1. No Member shall be personally liable for any debts, losses, obligations, or liabilities of the Company, except for (i) its Capital Contribution; (ii) any personal guaranties and (iii) any liabilities mandated by Delaware or other applicable law.

4.5.2. Except as otherwise provided by law, no Manager or Member shall be liable, responsible, or accountable in any way for damages or otherwise to the Company or to any of the Members for any act or failure to act pursuant to this Agreement or otherwise unless there is a judicial determination that (i) such person acted in bad faith, (ii) the conduct of such person constituted intentional misconduct or a knowing violation of law, (iii) such person gained a financial benefit to which it was not legally entitled, or (iv) such person failed to perform her duties, specifically with respect to distributions under the applicable Law, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.

4.5.3. The Company shall indemnify, defend, and hold harmless the Managing Member and the Member (severally, the "Indemnitee" and collectively, the "Indemnitees"), from and against any claims, losses, liabilities, damages, fines, penalties, costs, and expenses (including, without limitation, reasonable fees and disbursements of counsel and other professionals) arising out of or in connection with any act or failure to act by an Indemnitee pursuant to this Agreement, or the business and affairs of the Company, to the fullest extent permitted by law; provided, however, that an Indemnitee shall not be entitled to indemnification hereunder if there is a judicial determination that (a) such Indemnitee's actions or omissions to act were made in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated, or (b) such Indemnitee personally gained a financial benefit to which the Indemnitee was not legally entitled.

4.6. *No Exclusive Duty to Company.* The Manager shall not be required to manage the Company as its sole and exclusive function and it may have other business interests and may engage in other activities in addition to those relating to the Company. Neither the Company nor any Member shall have any right pursuant to this Agreement or otherwise to share or participate in such other business interests or activities or to the income or proceeds derived therefrom. The Manager shall incur no liability to the Company or any Member as a result of engaging in any other business interests or activities.

4.7. *Reliance on Acts of Manager.* No financial institution or any other person dealing with the Company shall be required to ascertain whether the Manager is acting in accordance with this Agreement, and such financial institution or such other person shall be protected in relying solely upon the deed, transfer, or assurance of and the execution of such instrument or instruments by the Manager.

4.8. *Transactions With the Company.* No transaction or contract to which the Company is or may be a party shall be void, voidable or a breach of fiduciary responsibility by reason of the fact that the Manager is a party thereto, provided that the transaction or contract is not less favorable to the Company than an arm's-length transaction or contract with an unrelated person, or is otherwise fair to the Company at the time it is authorized.

4.9. *Tax Returns and Elections.* The Manager shall file the Company's tax returns and determine whether to make any available election under the Code or any applicable state or local tax law on behalf of the Company. At such time as there is more than one Member, a Member will be selected as the "Tax Matters Partner" for the Company and such Member's name shall be set forth on an attached Schedule.

ARTICLE V
Transfers of Interest

5.1 *Transfers.* The Member may transfer in whole or in part its interest in the Company.

ARTICLE VI
Admission of Additional Members

6.1 *Admission of Additional Members.* The Member may admit one or more additional members to the Company.

ARTICLE VII
Dissolution, Liquidation, and Termination of the Company

7.1. *Events of Dissolution.* The Company shall be dissolved upon the happening of any of the following events:

7.1.1. Upon the consent of the Member and if at such time as there is more than one (1) Member, upon the consent of Members holding at least two-thirds (2/3) of the Membership Interests;

7.1.2. Upon the death, retirement, resignation, bankruptcy or dissolution of the Member or the occurrence of any other event which terminates the continued membership of the Member in the Company, provided, however, if at such time there are one or more other Members remaining, the remaining Members have the right to avoid dissolution of the Company and elect to continue the business of the Company on the same terms as this Agreement. Such right can be exercised by the affirmative vote of Members holding at least two-thirds (2/3) of the Membership Interests to continue the business of the Company. Such election to continue the business of the Company must be made within ninety (90) days after the occurrence of the dissolution event;

7.1.3. Upon the entry of a decree of judicial dissolution under applicable Delaware Law.

# ARTICLE VIII
## General Provisions

8.1. *Applicable Law.* All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the State of Delaware.

8.2. *Article and Section Titles.* The headings herein are inserted as a matter of convenience only and do not define, limit, or describe the scope of this Agreement or the intent of the provisions hereof.

8.3. *Terms.* Common nouns and pronouns shall be deemed to refer to the masculine, feminine, neuter, singular, and plural, as the identity of the Person may in the context require.

8.4. *Separability of Provisions.* Each provision of this Agreement shall be considered separable; and if, for any reason, any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid.

8.5. *Amendment.* The Member shall have the right to amend this Agreement at any time.

8.6. *Treatment as Partnership.* At such time as there is more than one Member, it is understood that, to the extent permitted by law, the Company shall be treated as a partnership for federal, state and local income and other tax purposes. The Members and the Manager shall take no action that would cause the Company to be treated as an entity other than a partnership for such tax purposes. Except as otherwise provided in this Agreement, the Manager shall, in his sole and absolute discretion, determine whether to make any available election pursuant to the Code or the Regulations. The Manager shall have the right to seek to revoke any such election (including, without limitation, the election under Section 754 of the Code) upon the Manager's determination, in his sole and absolute discretion, that such revocation is in the best interests of the Company.

IN WITNESS WHEREOF, the Member has executed, or caused this Agreement to be executed as of the date set forth herein above.

        MEMBER:

        DHD VENTURES CAPITAL, LLC

by: _____
        Thomas Masaschi, Member/Manager

_____
Jason Teller, Member