# EXHIBIT 13

[Acceleration Letter]

Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, New York  10022

troutman.com



**Joseph M DeFazio**
joseph.defazio@troutman.com

**Stephen J. Steinlight**
stephen.steinlight@troutman.com

January 8, 2021

**VIA FEDERAL EXPRESS AND EMAIL**

Scott Sydelnik, Esq.
Davidson Fink
28 East Main Street, Suite 1700
Rochester, NY 14614
ssydelnik@davidsonfink.com

F. Scott Molnar, Esq.
Byrne, Costello & Pickard, P.C.
Tower I, Suite 1600
100 Madison Street
Syracuse, New York  13202
smolnar@bcplegal.com

Re:   Notice of Default, Acceleration, and Reservation of Rights

   Concerning $22,8000,000.00 loan (the "**Loan**") to Homestate Asset Management, LLC ("**Borrower**"), secured by the Multifamily Loan and Security Agreement (the "**Loan Agreement**" or the "**Agreement**") and held by U.S. Bank National Association, as Trustee for the benefit of Holders of Banc of America Merrill Lynch Commercial Mortgage Inc., Multifamily Mortgage Pass-Through Certificates, Series 2016-KX02 (the "**Lender**"), on behalf of Lender, securing and encumbering property located at 111 East Avenue, 101-129 East Avenue, Rochester, NY 14604 (the "**Mortgaged Property**")

Dear Messrs. Sydelnik and Molnar:

This firm represents the Lender in connection with the Loan Agreement, and all other agreements, instruments and documents, at any time executed and delivered in connection therewith, each as amended, restated, supplemented or otherwise modified from time to time (collectively referred to as the "**Loan Documents**").

The Borrower is hereby notified by the Lender that an Event of Default has occurred under the Loan Documents.  Borrower's Event of Default was described in our prior July 30, 2020 correspondence and is further detailed herein.  Please take notice that all capitalized terms not defined herein shall have the meaning ascribed to them in the Loan Documents.



In the Amended and Restated Operating Agreement of Borrower dated October 29, 2013, DHD Ventures Capital, LLC is listed as the sole member of Borrower (the "**Original Sole Member**") with Thomas Masaschi named as the appointed Manager (the "**Manager**"). On November 1, 2018, the Original Sole Member transferred 49% of its membership interest in the Borrower to Trason Elm, LLC (the "**Additional Member**").  Along with the transfer of the membership interests to the Additional Member, the Original Sole Member also transferred, and now shares, the managerial rights in Borrower with Daniel Elstein (the "**Transfer**"). However, Section 7.02(d) of the Loan Agreement prohibits "A Transfer of any general partnership interest in a partnership, or any manager interest (whether a member manager or non-member manager) in a limited liability company, or a change in the trustee of a trust other than as permitted in Section 7.04, if such partnership, limited liability company, or trust, as applicable, is Borrower or Designated Entity for Transfers".  Thus, the Transfer of the Original Sole Member's managing rights to Daniel Elstein is prohibited under Section 7.02 of the Agreement. Accordingly, an Event of Default has occurred under Section 9.01(f) of the Agreement, which states that "A Transfer occurs that violates provisions of Article VII, whether or not any actual impairment of Lender's security results from such Transfer." As a result of the Event of Default, the Lender hereby declares that the entire Debt and all other sums which are due under the Loan Documents are immediately due and payable and demands payment of same.  If Borrower would like a Loan payoff statement, please contact the undersigned.

The Lender expressly reserves all of its rights and remedies under applicable law and the Loan Documents, including, without limitation, its right to impose late payment charges, and interest at the Default Rate from the date of the first Event of Default pursuant to section 9.02 of the Agreement.

Under no circumstances shall the Lender be deemed to have waived the Event of Default.  No forbearance, delay or inaction by the Lender in the declaration of an Event of Default or consequential exercise of its rights and remedies, and no continuing performance by the Lender or the Borrower under the Loan Documents (a) shall constitute:  (i) an amendment, modification or alteration of the terms, conditions or covenants of the Loan Documents, all of which remain in full force and effect; or (ii) a waiver, release or limitation upon the Lender's exercise of any of its rights and remedies thereunder, all of which are hereby expressly reserved; or (b) shall relieve or release the Borrower, any guarantor or any other party obligated under any Loan Document (each of the foregoing a "**Credit Party**" and collectively the "**Credit Parties**") in any way from any of its respective duties, obligations, covenants or agreements under the Loan Documents or from the consequences of the Event of Default or any other Events of Default that have occurred or may occur.  The Lender is not obligated to waive the Event of Default or any other Event of Default or defaults, whether now existing but not yet declared or which may occur after the date of this letter.

Nothing in this letter or in any ongoing or future discussions or negotiations between Lender and any Credit Party, nor any delay on the part of the Lender in exercising any of its rights and remedies under the Loan Documents and/or applicable law, shall directly or indirectly: (i) create any obligation to forbear from taking any enforcement action, or to make any further extensions of credit, (ii) constitute a consent to, or waiver of, any Event of Default or any past, present or future default or Event of Default or other violation of any provisions of the Loan Documents, (iii) amend, modify or operate as a waiver of any provision of any Loan Document or any right, power, privilege or remedy of the Lender thereunder or under applicable law or constitute an agreement



to forbear or to restructure the Loan Agreement and other obligations of the Credit Parties under the Loan Documents (the "**Obligations**") in any respect or otherwise modify the capital structure of any or all of the Credit Parties, or (iv) constitute a course of dealing or other basis for altering any rights or obligations of the Lender under the Loan Documents, or any Obligations of the Borrower or any other Credit Party under the Loan Documents or any other contract or instrument. Nothing contained in this letter shall confer on the Borrower or any other Credit Party, person or entity any right to notice or cure periods with respect to any default or Event of Default under the Loan Documents except to the extent expressly provided for therein. Any notice or cure periods with respect to the Event of Default have already been exhausted and this letter constitutes notice of any Event of Default to the extent required to be delivered under the Loan Documents.

From time to time, the Lender may have sent, and may in the future send, to the Credit Parties, statements of Loan balances. Such statements are generated for the Credit Parties' information and convenience only, and do not waive, amend or alter the Obligations under the Loan Documents. By means of example, and without limitation, statements may fail to include default interest charges, late fees and/or legal fees, which are due and payable under the Loan Documents. Thus, to the extent that such statements are inconsistent with any term of the Loan Documents, or to the extent that such statements do not accurately reflect balances or any payments or relief to which the Lender is entitled to under the Loan Documents, the Loan Documents shall control.

The Lender expressly reserves all of its rights, powers, privileges and remedies under the Loan Documents and/or applicable law as the result of the Event of Default retroactive to the date of its occurrence, including, without limitation, Lender's right at any time, as applicable, (i) to commence any legal or other action to collect any or all of the Obligations from any or all of the Borrower, the other Credit Parties, and any other person liable therefor and/or from any collateral securing the Obligations (the "**Collateral**"), (ii) to foreclose or otherwise realize on the Mortgaged Property or any Collateral and/or, as appropriate, to set-off or apply to the payment of any or all of the Obligations, any or all of the Collateral, (iii) to take any other enforcement action or otherwise exercise any or all rights and remedies provided for by any or all of the Loan Documents or applicable law, and (iv) to reject any forbearance, financial restructuring or other proposal made by or on behalf of the Borrower, any other Credit Party or any creditor or equity holder. The Lender may exercise its rights, powers, privileges and remedies, including those set forth in clauses (i) through (iv) above at any time in its sole and absolute discretion without further notice. No oral representations or course of dealing on the part of the Lender or any of its officers, employees or agents, and no failure or delay by the Lender with respect to the exercise of any right, power, privilege or remedy under any of the Loan Documents or applicable law shall operate as a waiver thereof, and the single or partial exercise of any such right, power, privilege or remedy shall not preclude any later exercise of any other right, power, privilege or remedy. Any agreement, commitment, assurance or intention of the Lender with respect to any aspect of the Loan or any Loan Document will be valid only if in writing and executed by an authorized officer of the Lender. Except as specified herein, this letter does not attempt to summarize all (i) existing breaches, defaults and Events of Default existing under the Loan Documents and (ii) rights and remedies of the Lender under the Loan Documents.



Sincerely,

Joseph M. DeFazio

cc: Dustin Johnson, KeyBank, National Association
 (via email dustin_johnson@keybank.com)